UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THE OKAVAGE GROUP, LLC,

        Plaintiff,

v.                                                                  Case No.: 3:21-cv-448-WWB-LLL

UNITED WHOLESALE MORTGAGE,
LLC and MATHEW ISHBIA,

        Defendants.
                                     /

## ORDER

THIS CAUSE is before the Court on Defendants' Motion to Dismiss Supplemental Class Action Complaint (Doc. 102). United States Magistrate Judge Laura L. Lambert issued a Report and Recommendation ("**R&R**," Doc. 112), in which she recommends that Defendants' Motions be granted, and the Supplemental Class Action Complaint (Doc. 96) be dismissed in its entirety. Plaintiff filed Objections (Doc. 116), to which Defendants filed a Response (Doc. 117).

### I.  BACKGROUND

No party has objected to the relevant background as fully set forth in the R&R and it is hereby adopted and made a part of this Order accordingly. (Doc. 112 at 2–10).

### II.  LEGAL STANDARD

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district

court must consider the record and factual issues independent of the magistrate judge's report, as de novo review is "essential to the constitutionality of [§] 636." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). The objecting party must state with particularity findings with which it disagrees, along with its basis for the disagreement. *Kohser v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016) (citing *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). The court will not consider "[f]rivolous, conclusive, or general objections." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (citation omitted).

### III.   DISCUSSION

In the R&R, Magistrate Judge Lambert recommends finding that the Court lacks personal jurisdiction over Defendant Mathew Ishbia and that Plaintiff has failed to adequately plead a violation of Section 1 of the Sherman Act—under either a *per se* or rule of reason analysis—, a violation of Section 2 of the Sherman Act, tortious interference under Florida law, or a violation of the Florida Deceptive and Unfair Trade Practices Act. Plaintiff does not object to the Magistrate Judge's recommendation regarding its tortious interference claims. Therefore, after an independent de novo review of the record, the Court agrees entirely with the analysis set forth in the R&R regarding the tortious interference claims and Defendants' Motion will be granted as to such claims without further discussion.

First, Plaintiff objects to the recommendations regarding its *per se* claim under Section 1 of the Sherman Act. Plaintiff relies on an alleged hub-and-spoke agreement, in which Defendant United Wholesale Mortgage, LLC ("**UWM**") is the hub and the brokers that agreed to its ultimatum are the spokes. *See In re Disposable Contact Lens Antitrust*,

215 F. Supp. 1272, 1291–92 (M.D. Fla. 2016).  While there is no dispute that Plaintiff has adequately alleged vertical agreements between UWM and many of its brokers, Plaintiff must also allege that the brokers formed a horizontal agreement, which the R&R finds Plaintiff failed to do.  (Doc. 112 at 21–24).  Plaintiff argues, however, that the allegations of statements made by brokers in support of the ultimatum "constitute invitations to collude," (Doc. 116 at 5), and the R&R erred in finding such statements to be independent expressions of assent, as opposed to evidence of concerted action.  Plaintiff also argues that the R&R failed to consider allegations that agreeing to the ultimatum was contrary to the brokers' self-interest.  Having considered the allegations of the Supplemental Class Action Complaint (Doc. 96), the well-reasoned analysis of the R&R, and the cases cited in Plaintiff's Objections, the Court is unpersuaded that Plaintiff has plausibly alleged anything more than knowledge by UWM brokers that other brokers intended to assent to the ultimatum and parallel conduct without any "plus" factor, such as abnormal interfirm communications or actions against self-interest.

With respect to the communications, Plaintiff has failed to make any nonconclusory, factual allegations that support an inference that the brokers that agreed to the ultimatum would not have agreed absent an understanding that the other brokers would follow suit.  In fact, Plaintiff specifically alleges that numerous brokers made dissenting comments as well, but this lack of mutual assurance did not hinder several brokers from agreeing to the new terms from UWM.  (Doc. 96, ¶¶ 43, 78–81).  Taken together, Plaintiff's allegations, as stated in the R&R, only plausibly allege individual expressions of support and parallel conduct.

Additionally, the Court sees no error in the Magistrate Judge's failure to discuss the holding in *United States v. Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015). As an initial matter, the case is not binding on this Court and was in a vastly different procedural posture. Furthermore, the facts established in *Apple* are distinguishable from Plaintiff's allegations in this case. In *Apple*, the publishers—the "spokes" of the agreement—had already expressed an interest in coordinated efforts to raise prices before Apple introduced the vehicle for doing so. *Id.* at 301–02. Apple also informed the publishers that it was seeking a "critical mass," and would not launch the program without such agreement by the publishers. *Id.* at 302, 304, 306. There was also evidence that the publishers were aware, based on the terms of the offer from Apple, that reaching critical mass was necessary to effectively implement a market change. *Id.* at 305. There was more than mere evidence of assistance and encouragement between the publishers in accepting the deal, there was concerted pressure to take collective action at the highest levels. *Id.* at 307–08. Finally, the publishers used the power gained from their collective agreement with Apple to leverage favorable negotiations with Apple's competitor. *Id.* at 309.

Here, however, Plaintiff has not alleged analogous facts. Specifically, there are no factual allegations that the brokers were predisposed to concerted action toward a common improper goal, that the brokers were told that the change would only be made with majority agreement, or that a majority agreement was necessary to reach the desired result. In fact, Plaintiff specifically alleges that Defendants did not expect such a high rate of acceptance among the brokers. (Doc. 96, ¶ 61). There are only minimal allegations regarding push back on dissenting brokers and no allegations that there was significant

pressure applied between brokers to accept the agreement. Furthermore, there are only conclusory allegations that the failure to reach a majority would negatively impact individual brokers, but there are no allegations that the brokers utilized any power gained by the agreement to benefit themselves. Instead, Plaintiff alleges that the brokers were harmed either way. (*Id.* ¶ 76). Thus, the Court does not find the holding in *Apple, Inc.* relevant or persuasive and the Magistrate Judge did not err in failing to discuss it in the R&R.

Next, Plaintiff argues that the Magistrate Judge failed to consider the allegations set forth in paragraphs 35 and 61 regarding assent to UWM's terms being contrary to the broker's self-interest. Although these paragraphs are not specifically cited in the R&R, the same information is essentially repeated in paragraph 65, which the Magistrate Judge quoted and rejected. (*Id.* ¶¶ 35, 61, 65). Thus, it is clear the Magistrate Judge considered the allegations regarding the brokers' self-interest. The specific number of brokers that accepted UWM's new terms does not alter the analysis and still provides nothing more than a conclusory assertion that the decision to deal with UWM was contrary to the broker's self-interest. As already noted, Plaintiff specifically alleges that the brokers were harmed regardless of the choice they made, meaning declining the offer was also against their self-interest. (*Id.* ¶ 76). Accordingly, without more, Plaintiff's allegations of conduct against self-interest also fall short of stating a plausible inference of concerted action. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066, 1074 (11th Cir. 2017) ("[T]he allegations must nevertheless state a claim for relief that is plausible—and not merely possible—on its face.").

5

Plaintiff also argues that the Magistrate Judge failed to correctly apply the "cut off" principal set forth in *Silver v. New York Stock Exchange*, 373 U.S. 341 (1963).  The Court, however, fails to see any factual similarities between *Silver* and the facts alleged in the Supplemental Class Action Complaint.  *See id.* at 348.  Nor does the Court find error in the Magistrate Judge's application of *Northwest Wholesale Stationers, Inc. v. Pacific Stationary & Printing Co.*, 472 U.S. 284, 295–96 (1985) in this case.  Thus, Plaintiff's "cut off" objection will also be overruled.

With respect to the relevant market, Plaintiff first argues that the Magistrate Judge misapplied the pleading standard in finding that Plaintiff failed to plead that the wholesale lending market—as opposed to the total lending market—was the relevant market.  Plaintiff's objection in this regard is conclusory and fails to cite any specific evidence in the R&R that the Magistrate Judge did not apply the proper standard and the Court sees no such error in the Magistrate Judge's analysis of the relevant market.

Second, Plaintiff argues that the R&R fails to address "detailed allegations" set forth in paragraphs 22 and 23. (Doc. 116 at 8).  The Court disagrees that these allegations were not considered in the market analysis.  In fact, they are explicitly cited and discussed in the analysis.  (Doc. 112 at 31–32).  Moreover, the allegations set forth in paragraphs 22 and 23 relate to the relationship between the broker and client and the benefits to the broker, but fail to state anything more than that "[b]uyers *may* opt to hire an independent mortgage advisor or broker[.]" (Doc. 96, ¶¶ 22–23).  Even if the R&R did not consider these statements, Plaintiff fails to provide anything more than a conclusory assertion that these allegations support Plaintiff's proffered relevant market.  Therefore, the Court finds that Plaintiff's objections as to the relevant market analysis are unsuccessful.

Plaintiff also raises objections to the Magistrate Judge's market share analysis. Because the Court agrees that Plaintiff has failed to plead adequate factual information to distinguish the wholesale market from the total market—which includes both wholesale and retail—the Court need not address Plaintiff's objections specific to wholesale market share. Nevertheless, the Court also finds that Plaintiff's objections in this regard are unavailing. Specifically, Plaintiff argues that the Magistrate Judge should have credited the allegation that "[d]ata from the fourth quarter of 2022 indicates that UWM [has] . . . a most recent approximate 54% share of the wholesale market[,]" (Doc. 96, ¶ 104), as opposed to the allegation that "UWM is the largest wholesale mortgage lender, with approximately 34% market share of the wholesale market," (*id.* ¶ 27), or evidence from UWM's annual report dated March 1, 2023, that it has thirty-eight percent market share, (Doc. 112 at 34). However, as the R&R notes, Plaintiff's allegation is based on the statement that UWM has a "54% market share of the broker channel," which was made during an earnings call in 2022. (Doc. 112 at 33). Plaintiff does not dispute this characterization of the evidence. Plaintiff also does not explain why fifty-four percent of the "broker channel" is the same as market share or should be credited over Plaintiff's specific allegation regarding market share or subsequent evidence that placed UWM's market share in roughly the same ballpark for the year. Simply put, Plaintiff fails to address why its reliance on the fifty-four percent number is "the most relevant figure" or plausibly alleges market share. (Doc. 116 at 8–9). Therefore, even if the wholesale mortgage market was the relevant market, Plaintiff's objection with respect to market share falls short.

Plaintiff also argues that the R&R failed to consider its argument that market power can be established by evidence the defendant can raise prices or impose burdens on an appreciable number of buyers.  As an initial matter, Plaintiff's objection is conclusory and can be rejected on this basis alone.  Furthermore, the case cited by Plaintiff stands for the proposition that evidence that "the seller has the power to raise prices, or impose other burdensome terms such as a tie-in, with respect to any appreciable number of *buyers* within the market" is relevant to the market power analysis.  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 696 (S.D. Fla. 2004) (emphasis added) (quotation omitted).  However, the paragraphs of the pleading cited do not allege power to raise prices or to impose terms on the *buyers* of UWM's services.  (Doc. 96, ¶¶ 61, 82, 103).  Plaintiff fails to state that the power to impose burdens on an intermediary is relevant.  Additionally, while Plaintiff might allege that UWM had the power to impose conditions on the relationship with its brokers, Plaintiff fails to explain why this is a "burdensome" term.  Finally, the line of cases Plaintiff relies on generally relate to tying arrangements, which are not at issue in this case, and Plaintiff fails to provide any analysis as to why the line of cases is relevant to the facts of this case.  Thus, Plaintiff's objection will be overruled.

Lastly, with respect to its *per se* claim, Plaintiff argues that the Magistrate Judge impermissibly heightened the pleading standard regarding barriers to entry.  Having reviewed the allegations of the Supplemental Class Action Complaint and the cases cited by Plaintiff, the Court again disagrees.  While Plaintiff does not have to rebut every argument regarding barriers to entry, where there are clear gaps in the Plaintiff's allegations it fails to push the allegations regarding barriers to entry across the line to

8

plausible. (Doc. 96, ¶¶ 83–84). The Court agrees with the R&R. Therefore, Plaintiff's objections with respect to the alleged *per se* violations will be overruled.

Turning to the rule of reason claims, Plaintiff argues that the R&R failed to consider the allegations of harm to Rocket Mortgage and Fairway as reflective of harm on the market, and that disruption to the independent choices of brokers harms competition. The Court disagrees. The R&R specifically addresses Plaintiff's allegations regarding the effects of the ultimatum on Rocket Mortgage, Fairway, and brokers, and notes that Plaintiff failed to plead any factual allegations tying these purported harms to more than conclusory assertions of harm to competition. In all other respects, Plaintiff's objections are merely a rehashing of the arguments raised and rejected in its briefing. However, "[i]t is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a second bite at the apple when they file objections to a[n] R & R." *Hall v. Sargeant*, No. 18-cv-80748, 2018 WL 6019221, at *1 (S.D. Fla. Nov. 16, 2018) (quotation omitted). Thus, the Court will not repeat the well-reasoned analysis already set forth in the R&R on this point.

Plaintiff also argues that the Magistrate Judge failed to consider its allegations regarding interference with the "autonomy of the marketplace." (Doc. 116 at 11). While the "autonomy of the marketplace" argument is not directly addressed in the R&R, as Defendants point out, the cases cited by Plaintiff only proceed to this analysis after finding sufficient market control or power. *See Realcomp II, Ltd. v. Fed. Trade Comm'n*, 635 F.3d 815, 829 (6th Cir. 2011) (noting that because the petitioner "possesses substantial

9

market power" the court would consider the "anticompetitive tendencies" of the policy); *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 191 (3d Cir. 2005) (noting that the court would consider "anti-competitive effect" because the government "demonstrated that Dentsply possessed market power"). The R&R finds Plaintiff has failed to adequately allege market control or power, and this Court agrees. Plaintiff has not cited any cases that consider this argument absent a showing of market power or control. *Cf. Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1283–84 (10th Cir. 2012) (finding that the "reduction of choice" in the market argument "is simply circular and refers back to [the] claims of market power"). The R&R does otherwise consider Plaintiff's allegations regarding harm to brokers as evidence of potential harm to competition but finds that Plaintiff failed to allege sufficient factual information to describe how such harms would be likely to harm competition. Having reviewed the allegations of the pleading, this Court agrees. Therefore, Plaintiff's second objection will also be overruled.

Plaintiff's remaining objections turn on the success of their objections to the antitrust claims. Therefore, because the Court finds Plaintiff's objections with respect to the antitrust claims unpersuasive, the Court need not address Plaintiff's remaining objections.

**IV. CONCLUSION**

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Objections (Doc. 116) are **OVERRULED**.
2. The Report and Recommendation (Doc. 112) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

3. Defendants' Motion to Dismiss Supplemental Class Action Complaint (Doc. 102) is **GRANTED**.

4. The Supplemental Class Action Complaint (Doc. 96) is **DISMISSED without prejudice**.

5. The Clerk is directed to terminate all other pending motions and close this case.

**DONE AND ORDERED** in Jacksonville, Florida on September 20, 2024.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

11